## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK ALLAN KOPP,**

        **Petitioner,**

                                            **Case No. 1:04-CV-234**

**v.**                                            **Hon. Wendell A. Miles**

**THOMAS BIRKETT,**

        **Respondent.**

_____/

### REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### I.     Background

The Michigan Court of Appeals summarized the facts of this case as follows:

> The evidence at trial indicated that defendant participated with Rogers, Maleski, and Rivero in the fatal beating, robbery, and carjacking perpetrated against the victim outside a bowling alley in the city of Grand Rapids. The victim, after being severely beaten, was stuffed into the trunk of his own car, and driven to a remote location in Mecosta County, where he was repeatedly stabbed with scissors and left to die. Trial testimony also indicated that while the victim was likely beaten into a helpless condition in the bowling alley parking lot, he survived even the stab wounds but died from blunt force injuries to his abdomen and head after several hours without medical attention. Defendant, Maleski and Rivero were apprehended the next morning after the police stopped the victim's car, that defendant was driving, for a traffic violation. The prosecutor also presented evidence that the DNA profile of the victim matched that of blood found in the trunk of the car, on clothes that defendant, Maleski and Rogers had been wearing, and on other items of evidence.

*People v. Kopp*, No. 232165 (Mich. App. Sept. 13, 2002), slip op. at 1.  The jury convicted petitioner of felony murder, M.C.L. § 750.316(1)(b), unarmed robbery, M.C.L. § 750.530, carjacking, M.C.L. § 750.529a, and kidnaping, M.C.L. § 750.349.  Defendant was sentenced to life in prison for murder

and concurrent prison terms of 10 to 22 ½ years, 22 ½ to 35 years, and 25 to 40 years for unarmed robbery, carjacking, and kidnaping, respectively.

Petitioner raised the following issues to the Michigan Court of Appeals:

I.      The defendant was denied the effective assistance of trial counsel because counsel failed to raise the legality of the initial traffic stop before or at trial.

II.     The trial court reversibly erred in denying the defense motion to suppress oral and written statements the defendant allegedly made to police.

III.    The trial court reversibly erred in admitting at trial DNA evidence.

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Kopp*, No. 232165. Petitioner raised the same issues in an application for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Kopp*, No. 122412 (Mich. March 31, 2003).

Petitioner filed his petition for writ of habeas corpus on March 3, 2004. The court returned the petition for failure to comply with the pleading requirements of with Rule 2 of the Rules Governing § 2254 cases. Petitioner filed his amended petition on July 26, 2004, raising four issues:

I.      Petitioner was denied effective assistance of counsel.

II.     Trial Court erred in admitting alleged statements by petitioner.

III.    Trial court erred in admitting DNA evidence at trial.

IV.     Petitioner was convicted in violation of his Fourth Amendment right from illegal searches.

**II.     Standard of Review under 28 U.S.C. § 2254**

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim

2

on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and

Effective Death Penalty Act of 1996, which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Lopez v. Wilson*, 426 F.3d 339, 342 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, 426 F.3d at 342.

A determination of a factual issue by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.  *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

3

### III.     Exhaustion

Before a state prisoner may seek habeas relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270 (1971);  *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). In the present case, petitioner has not exhausted all of his habeas claims in the state courts.  Specifically, petitioner did not raise the issues that his counsel failed to call any witnesses, failed to file motions challenging the conviction and sentence, and failed to strategize any defense.  As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice.  *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). However, under 28 U.S.C. § 2254(b)(2), a federal courts have the discretion to deny habeas relief on the merits  regardless of whether the petitioner has exhausted his state remedies. *See Jones v. Jones*, 163 F.3d 285, 299 (6th Cir. 1998).  As the Sixth Circuit explained in *Linger v. Akram*, No. 98-3506, 2001 WL 1136040 (6th Cir. Sept. 19, 2001):

> Because the "exhaustion" requirement is not jurisdictional, and the principles of comity and federalism which undergird that prerequisite are not offended by a federal court's refusal to grant habeas relief against a state by *rejecting* an unexhausted claim on its merits, federal judges possess the discretionary authority to *deny* unexhausted habeas claims on their merits to avert the purposeless future litigation, in the state courts, of substantively ill-conceived contentions.

*Linger*, 2001 WL 1136040 at * 3. [Emphasis in original.]

Petitioner's additional claims of ineffective assistance of counsel are without merit. Accordingly, the court will review the merits of these claims to avert purposeless future litigation in the state courts.

4

IV.     **Discussion**

A.      **Alleged illegal search of the victim's automobile and ineffective assistance of counsel for failing to suppress the evidence obtained in the search (Issues I and IV)**

These claims arise from the search of the victim's automobile, which yielded blood samples from the car's trunk, the car's interior, and from the defendants' clothing. Ms. Ann Hunt, an employee of the Michigan State Police Department of Forensic Science, and an expert in the area of DNA analysis, conducted DNA tests of these blood samples. Trial Trans. VI at 8-35. Ms. Hunter determined that the blood was that of the victim. *Id.* Counsel did not object to Ms. Hunt's testimony as an expert in the area of DNA. *Id.* at 14.

1.      **Fourth Amendment Issue**

In Issue IV, petitioner contends that the actual search of the victim's vehicle, which petitioner was driving at the time of the traffic stop, was an illegal search that violated his Fourth Amendment rights. Petitioner's claim is without merit. Collateral review of petitioner's Fourth Amendment claim is limited by *Stone v. Powell*, 428 U.S. 465 (1976), in which the Supreme Court ruled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone*, 428 U.S. at 494 (footnotes omitted). The record reflects that petitioner was afforded a full opportunity to litigate the Fourth Amendment issue. *See* discussion in § IV.A.2.a., *infra*. Accordingly, this claim should be dismissed.

2.      **Sixth Amendment claim**

a.      **Exhausted Claim: Counsel's failure to challenge the search**

In Issue I, petitioner contends that his counsel was ineffective for: failing to challenge the search of the victim's automobile; failing to call any witnesses; failing to challenge the conviction with any motions; and, failing to strategize any defense.  Petition at 7.  Petitioner seeks a remand for an evidentiary hearing.  *Id.* at 7A-1.

Although a federal habeas petitioner cannot assert a Fourth Amendment claim to the admissibility of evidence, "a habeas petitioner may assert a Sixth Amendment claim based on his counsel's failure to move for the suppression of evidence that should be excluded under the Fourth Amendment." *Northrop v. Trippett*, 265 F.3d 372, 378 (6th Cir. 2001).

The Michigan Court of Appeals addressed these claims as follows:

> Defendant first argues that his trial counsel was ineffective because he failed to move to suppress the fruits of a search on the grounds that police illegally stopped and searched the victim's automobile. We disagree. Defendant failed to file a motion for new trial or otherwise create a record in the trial court regarding an ineffective assistance claim, *People v. Ginther,* 390 Mich. 436 (1973), and therefore appellate review is limited to the existing record, *People v. Sabin (On Second Remand),* 242 Mich. App 656, 659 (2000).

> Defendant bears the burden of overcoming the strong presumption that his attorney was effective. *People v. Carbin,* 463 Mich. 590, 599-600 (2001). First, defendant must show that counsel's performance was deficient as measured against objective reasonableness under the circumstances according to prevailing professional norms, and second, the deficiency must have been so prejudicial that defendant was deprived of a fair trial. *People v. Pickens,* 446 Mich. 298, 303 (1994). This requires a defendant to show that there is a reasonable probability that but for counsel's unprofessional error(s) the trial outcome would have been different. *People v. Toma,* 462 Mich. 281, 302-303 (2000).

> In the case at bar, defense counsel's performance was neither deficient nor was defendant prejudiced because the undisputed evidence at the motion to suppress defendant's statement established that the police had a lawful basis to stop the vehicle for a traffic violation. *People v. Davis,* 250 Mich. App 357, 363 (2002). "Trial

6

counsel is not required to advocate a meritless position." *People v. Snider,* 239 Mich. App 393, 425 (2000).

At the suppression hearing, and at trial, Officer Dan Wells' testimony concerning the stop and arrest of defendant was undisputed. Wells testified that he was patrolling in Grand Rapids on March 16, 2000, and stopped a 1981 Cadillac, which had failed to signal a right turn. Wells identified defendant as the driver, who was arrested when he failed to produce a driver's license. This testimony established that Wells acted lawfully with probable cause to believe a Michigan traffic law violation had occurred, and he was therefore justified in stopping the vehicle. The motor vehicle code provides that it is a civil infraction to fail to signal a turn. MCL 257.648. Furthermore, the motor vehicle code provides that the police may stop and detain a person for "purposes of making a record of vehicle check," as well as writing a citation after observing a civil infraction. MCL 257.742(1). It is also a misdemeanor to drive a motor vehicle without a valid operator's or chauffeur's license, MCL § 257.301; MCL 257.901, and it is a misdemeanor to fail to keep such license in one's immediate possession when driving or to fail to display a license upon demand of a police officer, M.C.L. § 257.311; MCL 257.901. When a stop of an automobile by the police is objectively lawful because probable cause exists to believe a traffic violation has occurred or reasonable suspicion that criminal activity is imminent, the subjective intent of the officers is irrelevant to the validity of a subsequent stop, arrest or search and seizure based on probable cause. *Whren v. United States,* 517 U.S. 806, 812-813 (1996). Probable cause to believe defendant committed the traffic offense of failing to signal a turn justified the stop of defendant and subsequent arrest on a driver's license violation. *People v. Handy,* 192 Mich. App 207, 210-211 (1991).

Moreover, defendant lacks standing to challenge the search of the victim's Cadillac or to object to the police contact with the passengers in the car. Constitutional protections are personal and alleged invasions of the rights of others cannot be asserted vicariously. *People v. Wood,* 447 Mich. 80, 89 (1994); *People v. Bahn,* 234 Makeup 438, 446 (1999). A person has standing to assert a constitutional violation if he had a reasonable expectation of privacy, in light of all the surrounding circumstances, in the area or object of the intrusion. *People v. Smith,* 420 Mich. 1, 27 (1984). However, the expectation of privacy must be legitimate, or one that society is prepared to recognize as reasonable. *People v. Lombardo,* 216 Makeup 500, 504-505 (1996). In that regard, one in unlawful possession of a stolen automobile can hardly be said to have a legitimate expectation of privacy in stolen property operated on the public roadway that society is prepared to recognize as reasonable. *Rakas v. Illinois,* 439 U.S. 128, 141 n 9 (1978); *Smith, supra* at 28.

Thus, defendant cannot establish an error of counsel that would probably have altered the outcome of his trial. As noted above, ineffective assistance does not

occur when counsel declines to pursue futile motions.

*People v. Kopp*, No. 232165, slip op. at 2-3.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense," nor does it guarantee the accused "an excellent lawyer" or even a "good lawyer." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3, *5 (6th Cir. 1998). Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *United States v. Boone*, 437 F.3d

829, 839 (8th Cir. 2006) (internal quotes omitted), *cert. denied sub nom Washington v. United States*, -- S. Ct. -- (Oct. 2, 2006).

   Here, the issue is whether a reasonably competent attorney would have filed a motion to suppress the evidence in the victim's vehicle.  In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court discussed the criminal defendant's burden of proof in asserting such a claim:

> Although it is frequently invoked in criminal trials, the Fourth Amendment is not a trial right; the protection it affords against governmental intrusion into one's home and affairs pertains to all citizens.  The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure.  In order to prevail, the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue.
>
> The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process. . . . Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while defendant's defaulted Fourth Amendment claim is one element of proof in his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values.

*Kimmelman*, 477 U.S. at 374-375 [citations omitted].

   Petitioner's claim is without merit.  As the Michigan Court of Appeals correctly found, petitioner lacked standing to challenge the search because he did not have a legitimate expectation of privacy in the stolen automobile or its contents. *Rakas*, 439 U.S. at 141 n. 9; *United States v. Ott*, No. 99-3300, 2000 WL 1276744 at *3 (6th Cir. Aug, 28, 2000); *United States v. Hensel*, 672 F.2d 578, 579 (6th Cir. 1982).  There was no basis for petitioner's counsel to challenge the search of the victim's automobile.   Accordingly, petitioner's counsel was not ineffective for failing to move to suppress the evidence seized in the search. "There can be no Sixth Amendment

deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### b.    Unexhausted claims

As the court previously discussed, petitioner did not exhaust three ineffective assistance of counsel claims.  None of the unexhausted claims have merit.  In the interests of judicial economy, the court will address these unexhausted claims.

### i.    Counsel's failure to call witnesses and to have a defense strategy

First, petitioner contends that his counsel failed to call any witnesses in his defense. Petitioner's contention is without merit.  Petitioner was tried with a co-defendant, Joshua Rogers. However, while the court held a single trial to present proofs, each defendant had a separate jury. Trial Trans. III at 9.  Petitioner was represented by Attorney Flanagan and Rogers was represented by Attorney Clapp.  At the close of the government's case, petitioner elected not to call any witnesses:

> Ms. Flanagan: Your Honor, after speaking to my client, at this time we choose not to call any witnesses.

10

The Court:      Very good.  Thank you.

Trial Trans. VI at 70.  Defendant Rogers also declined to present any witnesses.  *Id.*

Other than stating that his mother was willing to testify, petitioner does not identify any witnesses or other evidence that defense counsel could have presented at trial.  Indeed, petitioner does not identify the substance or relevance of his mother's proposed testimony.

Counsel's decision to call a particular witness is a matter of trial strategy.  *See Barnes v. Elo*, 339 F.3d 496, 502 (6th Cir. 2003).  A trial counsel's decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See  McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994).   Petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *Id.*  Counsel is not ineffective for resting without calling any of the witnesses identified by a criminal defendant, where none of the witnesses were relevant to the defense theory.  *United States v. Kincaide*, 145 F.3d 771, 785-86 (6th Cir. 1998).  *See United States ex rel. Bradley v. Lane*, 834 F.2d 645, 649 (7th Cir. 1987) (defense counsel's failure to give an opening statement, failure to present witnesses and resting his case when the state completes its case-in-chief did not constitute ineffective assistance, where counsel made repeated objections at trial, vigorously cross-examined several key witnesses, moved for a directed verdict, and "gave what the state appellate court described as a persuasive closing argument" ).

Here, the record reflects that petitioner's counsel vigorously contested the government's case.  Counsel cross-examined all of the government's witnesses.  Trial Trans. III at 80-82, 92; IV at 21-25, 26-27; V at 52-53, 64, 76-77, 102-04, 107, 120-22; VI at 35-38, 68.  In addition, counsel: moved for separate trial (June 9, 2000); participated in extensive DNA hearings

on September 5, 6, 11 and 12, 2000;[1] later moved to supplement the record and re-open proofs with respect to the DNA hearings; and moved to suppress petitioner's confession.  *See* docket nos. 22, 26, 27, 28, 29, 30, 31, 32 and 35.  Finally, counsel's closing argument attempted to make the best of a bad situation, by pointing out that while petitioner did not deny driving the automobile, hitting the victim and searching the victim for his wallet, and using drugs and alcohol that night, he did not intend to kidnap and rob the victim.  Trial Trans. VI at 109-14.

Based on the record in this case, counsel was reasonably competent in her representation of petitioner.  As the court stated in *United States v. Cronic*, 466 U.S. 648, 657 n. 19 (1984), "the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade.*"*

### ii.     Counsel's failure to challenge the conviction with any motions

Finally, petitioner contends that his counsel "failed to challenge the conviction with any motions, i.e., motion for a new trial or reduce sentence." Petitioner does not set forth any basis for these claims.  The record reflects that, before his sentencing, petitioner reviewed the presentence report with counsel and had no additions or corrections.  Sent. Trans. at 3-4.  The record also reflects that petitioner's appellate counsel attacked the convictions on appeal.  Petitioner's claims amount to nothing more than a bald assertion of ineffective assistance of counsel.  An unsupported allegation of ineffective assistance, however, fails to overcome the "strong presumption that counsel's conduct

---

[1] The DNA hearings were held in the federal courthouse in Grand Rapids, Michigan, as a joint session of the Circuit Courts of Lake and Kent Counties.  DNA Hearing Trans. at 4 (Sept. 5, 2000/a.m.) (docket no. 26).  An assistant attorney general summarized the question before the courts as "whether or not there is general acceptance in the scientific community of the methods used by the Michigan State Police at this time and whether the procedures used individually with respect to the several defendants in these cases are in fact consistent with the general acceptance in the  -- in the scientific community." *Id.* at 8.

falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  *See*

*Fountain v. United States*,  211 F.3d 429, 435 (7th Cir. 2000); *United States v. DiTommaso*,  817

F.2d 201, 215 (2nd Cir. 1987); *Campbell v. Greene*, 440 F. Supp.2d 125, 149 (N.D.N.Y. 2006).

Accordingly, this claim should be denied.

### B.  Voluntariness of Petitioner's Confession

Next, petitioner contends that the trial court erred in admitting his oral and written

statements (his confession) to police because it was involuntary.  In petitioner's words:

> Defendant over-all is uneducated.  He admitting to heavy drinking, smoking both canibus and crack cocain, as well as having withdrawal's before police questioning.  Defendant waited over 8 hours before questioning begain, to go on for several hours. . . .

> Arresting officer Dan Well's stated he found an empty canibus baggy on the floor of the vehicle.  Defendant admitted to heavy drinking, and to smoking canibus and crack cocain.  Defendant's written statement could not be read at trial due to many error's in grammar, spelling and over-all not be understood.  Defendant stated he waited "hours" before being questioned, and during that time went thru withdrawal's on top of only 3 hour's of rest within a 30 hour time period.

> Defendant Petitioner ask's his statement's be suppressed, as he was not able to properly waive his miranda.

Petition at pp. 7 and 7B-1.

### 1.  Standard of review for voluntariness of confession

The Fifth Amendment privilege against compulsory self-incrimination bars the

admission of involuntary confessions against the accused.  *Jackson v. Denno,* 378 U.S. 368, 376

(1964);  *Finley v. Rogers*, 116 Fed. Appx. 630, 635 (6th Cir. 2004).  The voluntariness of a

confession is a mixed question of law and fact.  *Thompson v. Keohane*, 516 U.S. 99, 108-11. "The

ultimate question whether, under the totality of the circumstances, the challenged confession was

obtained in a manner compatible with the requirements of the Constitution is a matter for

13

independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  However, "subsidiary factual questions, such as . . . whether in fact police engaged in the intimidation tactics alleged by the defendant 'are entitled to the presumption of correctness.'" *Id.* (applying predecessor to § 2254(e)).

      Under clearly established Supreme Court law, "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir. 2006), quoting *Miller,* 474 U.S. at 109.  The question is whether a defendant's will was overborne at the time he confessed, which requires the Court to look at the totality of the circumstances surrounding the confession. *McCalvin*, 444 F.3d at 719, citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973), and *Reck v. Pate,* 367 U.S. 433, 440 (1961).  The "totality of all the surrounding circumstances" refers to both the characteristics of the accused and the details of the interrogation.  *Dickerson v. United States*, 530 U.S. 428,  434 (2000);  *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999).

      A non-exhaustive list of the factors applied in determining the "totality of the circumstances" includes: (1) the "crucial element of police coercion,"[2] (2) the youth of the accused,

---

[2]As the Supreme Court explained in *Colorado v. Connelly*, 479 U.S. 157, 164-5 (1986):

Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law . . . as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the "voluntariness" calculus. See *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional "voluntariness" . . . while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry.

(3) his lack of education, (4) his low intelligence, (5) the lack of any advice to the accused of his

constitutional rights, (6) the length of detention, (7) the repeated and prolonged nature of the

questioning, (8)  the use of physical punishment such as the deprivation of food or sleep, (9) the

location of the interrogation, (10) the defendant's maturity, and (11) physical condition, and (12)

mental health.  *Withrow v. Williams*, 507 U.S. 680, 693 (1993);  *Schneckloth*, 412 U.S. at 226.

> ## 2.        The state court decisions

In denying petitioner's motion to suppress his confession, the trial court made

numerous findings before concluding  that petitioner clearly understood his rights and that he was

not coerced into confessing:

> Turning to the evidence that we've heard in this case, we must first consider
> the voluntariness of the statement.  While I suspect that the issues of whether there
> was intimidation, coercion, or deception may not define the entire universe in terms
> of determining whether something is voluntary, it is at least a good beginning point.
>
> There does not appear in this testimony to be any evidence of intimidation.
> Mr. Kopp was highly familiar with police authorities.  He had been through the
> juvenile court system nine times.  He had been advised of his constitutional rights,
> his Miranda rights on those occasions.  He had prior adult arrests where presumably
> he was given his rights.  There is no indication that anybody promised him anything
> or threatened him physically or used any psychological tactics to intimidate him.  In
> a general sense, you might say the fact that he was held at the police station from
> 9:00 in the morning until 4:30 might be considered relevant to intimidation, but there
> is no evidence of actual intimidation, and I don't think that we can assume that
> simply because somebody is at the police station, that they are, per se, intimidated,
> certainly not one with Mr. Kopp's prior experience.
>
> There is no evidence of coercion.  Again, no evidence that he was subjected
> to physical or psychological pressures of any kinds which were in any way out of the
> ordinary or that he was unfamiliar with or inexperienced with.
>
> Finally, it is difficult to say that there is any deception.  It is possible to argue
> that because at 4:30 in the afternoon the police did not tell him that, first, they knew
> that it was not his uncle's car, but belonged to a gentleman named Willie Jones, and,
> secondly, they knew that Mr. Jones was missing, is an insufficient basis to say that

Mr. Kopp has been deceived.  The police are not required to tell every person they interrogate everything they know about the facts of that particular situation.

I can find no evidence that this was an involuntary statement, other than, perhaps, the evidence advanced by counsel that Mr. Kopp had been ingesting at least, according to him, gargantuan quantities of marijuana and cocaine and alcohol.  We will touch on that later.  But essentially I find that the statement was voluntary.

The next question is whether it was knowing and intelligent.  Mr. Kopp is a young man of limited intelligence.  He is not retarded, but he appears to me–he appears to me to have something probably in the low normal range.  He does have some learning disabilities.  In terms of his knowing, understanding, we have evidence that he has been given these warnings on at least nine prior occasions, plus probably other times after he graduated to the adult criminal system.  He has dealt with the police on many occasions in the past.  He was given his Miranda warnings.  He specifically indicated that he understood them, and he signed the card.

Now, we should talk a little bit about his claim to, first, be unable because of his alcohol consumption, unable to–and drug consumption, unable to know and intelligently understand what he's doing.

First, I have to say I don't believe all of Mr. Kopp's testimony.  For one thing, his testimony varied from one minute to the next.  At one point he was saying amazingly that he was ingesting a pound of marijuana a day at a cost of $1,500 to $2,500, and within five minutes he was saying that he was ingesting a pound of marijuana every two weeks.  He indicated that he worked as a drug dealer.  That's how he raised these large sums of money.  I find his description of on that night I believe he said he bought a large quantity of cocaine and broke it down into 260 rocks and smoked 150 of them, that's an absolutely incredible statement which is not believable.

I think there is no question that he and his companions used up substantial quantities of marijuana, some cocaine, and drank alcohol through the course of the evening.  But the question  is what kind of shape was he in at 4:30 in the afternoon?  When he was arrested at about 8:45 in the morning, the police officers who saw him could not detect any indication that he was intoxicated.  Detective Boillat could not indicate any symptoms -- could not see any symptoms of intoxication.  He sat in the police station where he clearly didn't get any drugs from about 9:00 in the morning, or he was in police custody from about 9:00 in the morning until 4:30 in the afternoon.

He points to his handwriting, which is Exhibit 5, or his statement, which is Exhibit 5, in which Detective Boillat indicated he couldn't read.  I am looking at it. In his statement to Detective Boillat, Mr. Kopp says he has difficulty with spelling

16

and reading, and it's quite apparent that that's the case.  However, an interesting fact about this statement is that while you can't make a great deal of sense out of it, the handwriting is very good.  You can read every single letter.  The problem is that, for instance, Mr. Kopp spells the word "went" w-a-t-h.  There are other highly imaginative spellings, and, frankly, when you read it, it's really very difficult to know what he's saying, although you can sometimes glean what he's trying to say.  He obviously has a reading and spelling disability, but he was certainly in sufficiently good shape that his handwriting wasn't bad at all.  All the letters are perfectly clear.  It's just the spelling that you can't comprehend.

There are other factors, and they include what Mr. Kopp said in his tape-recorded statement.  For someone who asserts that he was under the influence of alcohol and drugs and didn't know what he was signing or understand what its meaning was, he responded remarkably well to questions.  All his answers directly relate to the questions being asked, and I noted on Page 6, he's asked by Detective Boillat, "Can you describe this old man to me," and Mr. Kopp responds, "He's black. He limps.  He got an Afro.  He's dark skinned.  Like mid-sixties, a little older." Question: "Was he carrying a bowling ball or anything?"  "Yeah, he had a bowling ball."  "And did he have anything else, glasses, a hat?"  Kopp:  "He had a hat, a black, ah, I think a black and white or a blue and white hat."  "What kind of hat? Like a cowboy hat, a baseball type hat?" "Some, like one like mine, but it"–being talked over.  Boillat:  "A blue and white baseball type hat?"  Kopp: "Right."

Further on, he describes what clothing he was wearing that night in detail. He knows what kind of shirt he has, what kind of pants he has, what kind of shoes he was wearing, and he answers and describes each one and what color they were and whether they were long sleeve or short sleeve.

Throughout his interrogation, he has the ability to understand every question that's asked him and respond to it.  Having done that, in an interview that lasted for 46 pages, it is impossible for me to conclude that he did not know or intelligently understand the nature or the rights which he was waiving, and therefore the motion is denied.  Thank you.

Motion to Suppress Trans. at 121-27 (docket no. 35).

The Michigan Court of Appeals affirmed the trial court's decision denying

petitioner's motion to suppress his statements:

Before trial, defendant moved to suppress his statements to the police on the basis that they were not voluntary and that intoxication prevented a knowing and intelligent waiver of his rights according to *Miranda v. Arizona,* 384 U.S. 436, 478-479; 86 S Ct 1602; 16 L.Ed.2d 694 (1966). The trial court held a hearing required by

*People v. Walker (On Rehearing),* 374 Mich. 331, 338; 132 NW2 87 (1965), at which the police and defendant testified.

Due process and the common law require that for the statement of the accused in a criminal trial to be admitted as evidence it must have been freely and voluntarily made. *Daoud, supra* at 630-631; *Walker, supra* at 333. A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," rather than one where the defendant's "will has been overborne and his capacity for self-determination critically impaired." *People v. Cipriano,* 431 Mich. 315, 334; 429 NW2d 781 (1988), quoting *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S Ct. 1860, 6 L.Ed.2d 1037 (1961). A court must review all of the surrounding circumstances, with no single factor being determinative, including: the duration of the defendant's detention and questioning; the age, education, intelligence and experience of the defendant; whether there was unnecessary delay of arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency, to determine whether a statement is voluntary. *Sexton, supra* at 752-753.

Further, if the accused was in police custody, a statement of a defendant may not be used by the prosecutor as substantive evidence unless he demonstrates that, prior to any questioning, the accused was warned that he had a right to remain silent, that his statements could be used against him, and that he had the right to retained or appointed counsel. *Daoud, supra* at 633. The prosecutor also must prove by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his Fifth Amendment right against self-incrimination and to counsel before the defendant's statements during custodial interrogation may be admitted in evidence. *Id.* at 634. An objective standard is applied to determine the "totality of circumstances" involved, including the education, experience and conduct of the defendant, the credibility of the police, and whether a defendant's waiver of Fifth Amendment rights was voluntary, knowing and intelligent. *Id.* at 633-634. Furthermore, the analysis must be bifurcated: (1) whether the waiver was "voluntary," and (2) whether the waiver was "knowing" and "intelligent." *Id.* at 639.

Whether a waiver is "voluntary" depends on the absence of police coercion, and in this case there was no evidence of police coercion. *Id.* at 635. Defendant's waiver was "knowing" and "intelligent" if defendant was aware of his available options, but he need not comprehend the ramifications of exercising or waiving his rights. *Id.* at 636.

In the present case, whether defendant was able to understand his available options as outlined in the *Miranda* warnings, or whether he was too intoxicated to comprehend his rights, was a question of fact that the trial court was required to resolve at the *Walker* hearing and which is accorded due deference on appeal *People v. Prast (On Rehearing),* 114 Mich.App 469, 484; 319 NW2d 627 (1982). The

credibility of witnesses is the key factor in finding facts that are contested. In *Daoud, supra* at 629, our Supreme Court, quoting *Cheatham, supra* at 30, opined that "[c]redibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment." In *People v. Bender,* 208 Mich.App 221, 227; 527 NW2d 66 (1994), aff'd452 Mich. 594 (1996), this Court noted that it will give "deference to the trial court's superior ability to judge the credibility of the witnesses, and will not reverse the trial court's factual findings unless they are clearly erroneous."

Here, the trial court found that although defendant had consumed drugs and alcohol before he was arrested, he was not intoxicated at the time he waived his rights, and he gave the police both an oral and a poorly spelled written statement. The trial court's factual finding was supported by evidence of lack of outward manifestation of intoxication observed by the police, intelligent responsive answers to police questioning during the interview itself, and by defendant exhibiting fine motor skills as demonstrated by his good penmanship in his statement. The trial court did not clearly err by finding that intoxication had not prevented defendant from knowingly and intelligently waiving his rights.

Further, the evidence supported the trial court's factual finding that defendant, in fact, knowingly and intelligently waived his rights. The testimony showed defendant had numerous prior contacts with the police and had been read the *Miranda* rights on nine prior occasions in juvenile court. The police testified that defendant was read the *Miranda* rights and defendant acknowledged he understood them; defendant also admitted that he was read his rights and did not dispute the testimony of the police. Defendant signed an "advice of rights" card that the police testified was part of defendant's nonverbal communication that he understood his rights and desired to waive them. Again, defendant did not dispute the testimony of the police. In short, the trial court's factual finding that defendant knowingly and intelligently waived his rights is not clearly erroneous.

Moreover, an independent review of the totality of the circumstances does not create a definite and firm conviction that a mistake was made by the trial court finding that defendant's statements were voluntary. Although defendant was young, suffered from a learning disability, and had a low intelligence level, and he also had extensive experience dealing with the police and with the court system. The trial court, in the best fact-finding position, determined that defendant functioned in the low normal range and that at the time of his statement his cognitive abilities were not impaired by intoxicants. It was also undisputed that the police used no coercion, either through intimidation, threats, promises, or psychological tactics, to induce defendant to make a statement. Further, the testimony of the police that defendant understood his rights and chose to waive them and give a statement was not contradicted. The totality of circumstances demonstrated that defendant's statements

19

to the police were his "free and unconstrained choice," and therefore voluntary and admissible.

*People v. Kopp*, No. 31058350, slip op. at 3 -5.

### 3.      Petitioner's confession was voluntary

The trial court and the Michigan Court of Appeals performed lengthy and thoughtful examinations of the totality of the circumstances surrounding petitioner's confession. Petitioner disputes the courts' finding, and apparently claims that his lack of education, his mental condition and his physical incapacity rendered him unable to comprehend and waive his *Miranda* rights.

### i.      Lack of education and low intelligence

Petitioner was 18-years old at the time of his arrest.  The state courts observed that petitioner had some problems with reading and writing.  However, petitioner was also literate and appeared to understand his rights as they were explained to him.  He was read his *Miranda* and he signed a "advice of rights" card prior to his interrogation.  Petitioner was well-acquainted with the process of receiving *Miranda* rights from police officers.  He had extensive experience with the criminal justice system, having been given his *Miranda* rights at least <u>nine times</u> previously.  The trial court determined that petitioner was in the "low normal" intelligence range but noted that he was not mentally retarded.  Despite petitioner's below-average intelligence, it does not appear that he was otherwise afflicted with any mental or psychological disorders.  *See, e.g., Burke v. Johnson*, 167 F.3d 276, 285 (6th Cir. 1999) (plea bargain agreement was voluntary considering that defendant could read and write English and was "street wise" in that his encounter with police was not his first contact with the criminal justice system, "he had a lengthy criminal history").

### ii.    Physical health and mental health

Petitioner testified that he used alcohol and drugs prior to his arrest. Specifically, he stopped drinking at 1:00 or 2:00 a.m. and stopped smoking crack at about 3:30 a.m. before going to sleep on the day of his arrest. After being in police custody for 7½ hours, petitioner was interrogated at about 4:30 p.m., at which time he confessed to the charges against him. The trial court found petitioner's testimony regarding the consumption of mass quantities of drugs prior to his arrest was inconsistent and not credible. Although petitioner claims that he was so intoxicated that he could not understand the rights he was waiving, the officers detaining him detected no indication that he was intoxicated. By his own admission, petitioner had gone at least 12 hours without consuming any drugs or alcohol when he admitted his guilt to the detectives. The trial court concluded that at the time petitioner gave his statement, his cognitive abilities were not impaired by intoxicants. In this regard, the state courts noted petitioner's penmanship and descriptive account of the circumstances of the crime suggested that he was sober.

Even if petitioner had consumed alcohol before giving his confession, such consumption did is not automatically render his confession involuntary. *See, e.g.*, *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (defendant's incriminating statements were voluntary even though his taped interview had to be stopped briefly because he was "vomiting from the effects of the previous night's alcohol"); *Givens v. Yukins*, No. 98-2429, 2000 WL 1828484 at *9-10 (6th Cir. Dec. 5, 2000) (petitioner's waiver of her *Miranda* rights was voluntary, despite her claim that she was coerced by police and too intoxicated from her alleged use of crack cocaine and alcohol five and one-half hours earlier).

Based on the totality of the circumstances, the court concludes that petitioner knowingly and intelligently waived his *Miranda* rights and that his statements were voluntary. The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### C.    Trial court's admission of DNA evidence

Finally, petitioner contends that the trial court erred in admitting expert testimony concerning DNA evidence that matched the blood found in the victim's car and on petitioner's clothes to the victim.[3]

The Michigan Court of Appeals addressed this claim as follows:

Next, defendant argues that DNA evidence was admitted at trial without a sufficient foundation that 310 Genetic Analyzer used by the state police was properly calibrated to produce accurate results and also that the prosecutor's expert testified to the statistical significance of the DNA evidence without showing the reliability of underlying data on which statistical analysis was based. We find it unnecessary to address the issue presented by defendant because there was overwhelming evidence, aside from the DNA evidence, establishing defendant's guilt beyond a reasonable doubt, and because defendant acknowledged that he was an active participant in the crime. This was not a case that hinged on DNA evidence. Even if the admission of the DNA evidence had been made in error, such error would have been harmless. MCL 769.26; *People v. Lukity,* 460 Mich. 484, 491-495 (1999).

Defendant's statement to the police, which was properly admitted into evidence as ruled above, and other evidence presented to the jury clearly supported the convictions. Moreover, in arguments presented to the jury, defense counsel stated that defendant had been involved in the crime, including hitting and stomping the victim and "cutting his wind." Defendant's position was simply that he lacked the

---

[3] Petitioner reiterates this argument in a belated letter to the court filed on November 8, 2006 (docket no. 52). For the reasons set forth in this section, his argument is without merit.

requisite intent to commit the crimes.

In light of the evidence presented at trial and defendant's defense strategy, we fail to see how the DNA evidence had any meaningful significance in relation to the jury's verdict. There was no miscarriage of justice. *Lukity, supra* at 495.

*Kopp*, No. 232165, slip op. at 6.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)*, citing Estelle v. McGuire,* 502 U.S. 62, 69-70 (1991). In determining whether a trial error violated the constitution, the court must "evaluate whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Clemmons*, 34 F.3d at 357 *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Thus, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637.

Here, the Michigan Court of Appeals did not address the merits of petitioner's evidentiary claim. There was no finding that the trial court erred in admitting the DNA evidence. Rather, the appellate court held that even if the trial court had admitted the DNA evidence in error, the court's action was harmless error. The federal habeas question for this court is whether the admission of the DNA evidence deprived petitioner of due process as guaranteed by the Fourteenth Amendment. The court concludes that no due process violation occurred.

Petitioner has failed to demonstrate that but for the admission of the DNA evidence, the state would not have been able to meet this standard of proof. Ms. Hunt testified that the victim's blood was found throughout the automobile: the trunk liner, the back sear, side frame,

23

driver's seat and rear bench seat.  Trial Trans. VI at 24-26.  In addition, the victim's blood was on

a pair of scissors and various items of clothing, which included Nike tennis shoes.  *Id.* at 26-30.

Another witness identified the tennis shoes as belonging to petitioner.  Trial Trans. V at 72-23; Trial

Trans. VI at 29-30.

Ms. Hunt's testimony regarding the DNA evidence established that the victim's blood

was all over the car and on petitioner's shoes. The DNA evidence did not establish a cause of death

or identify petitioner as the murderer. This DNA evidence indicates that petitioner was present at

the scene of the crime.  However, petitioner's presence at the scene and his contact with the victim

was established by his own statement to the police.  Petitioner admitted that he was the lookout

while two co-defendants beat the victim and threw him in the trunk of the car.  Prelim. Exam Trans.

I at 102-03.[4]  Petitioner covered his face with a bandana so that the victim would not recognize him.

*Id.* at 104-05.  Petitioner hit the victim twice when he was on the ground, "grabbed his throat so he

wouldn't say help," and "grabbed his throat and squeezed . . .Just to cut his wind."  *Id.* at 105.

Petitioner stated that as the co-defendants kept hitting him,

> I stomped on him, 'cause he grabbed my leg.  Stomped on him.  Our shoes and shit
> are all bloody.  My pants are.  Like fuck it.  I want to go change.  After we got done
> doin' everything, after we got him all bloody and stuff, they threw him in the trunk.

*Id.* at 105-06.

Petitioner stated that he drove the victim's vehicle on the highway. *Id.* at 107.  "[W]e

was gonna throw [the victim] in the river, but he [sic] was like fuck it, throw him in the woods."

*Id.*  Petitioner drove down dirt roads and then found a field.  *Id.* at 107-08.  Petitioner popped the

---

[4] At trial, the court played a tape of petitioner's statement to the jury.  Trial Trans. IV at 13-14.  A transcript of the taped statement was admitted as Exhibit 27, but is not included in the trial transcript. *Id.*  For purposes of this report and recommendation, the court will rely on those portions of petitioner's transcript that were read into evidence at the preliminary examination.

24

trunk, and a co-defendant found a pair of scissors and stabbed the victim.  *Id.* at 108.  The victim

was yelling "I got a broken arm, I got a broken arm."  *Id.* at 109.  In petitioner's words, "I'm holdin'

the trunk, he's stabbin' him."  *Id.* at 108.  When they took the victim out of the trunk, petitioner said

that "none of us even checked him for a wallet."  *Id.* at 109. Petitioner found a wallet which

contained $400. *Id.* at 109.   During closing argument, petitioner's counsel recognized the extensive

evidence presented against petitioner, and conceded that petitioner drove the victim's automobile,

hit the victim and searched the victim for his wallet.  Trial Trans. VI at 109-14.

In light of petitioner's statement, in which he admits that he hit the victim, choked

the victim, was covered with the victim's blood, the court agrees with the appellate court that the

DNA evidence had no meaningful significance with respect to the jury's verdict.  Petitioner has not

demonstrated a due process violation in this case.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or

an unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this

claim.

### IV.     Conclusion

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules

Governing § 2254 Cases in the United States District Courts.


Dated:  January 10, 2007                          /s/ Hugh W. Brenneman, Jr.
                                                  Hugh W. Brenneman, Jr.
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).